**LAMAR ADVERTISING COMPANY,**
Plaintiff,

v.

**CITY OF DOUGLASVILLE,
GEORGIA, Defendant.**

**No. CIV.A. 102CV1554–BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 4, 2003.

Edward Adam Webb, Webb & Porter, Atlanta, GA, for Lamar Advertisiing Company, plaintiff.

Suzan Goodson Littlefield, Office of Suzan G. Littlefield, Joel Eugene Dodson, Office of Joel E. Dodson, Douglasville, GA, Laurel E. Henderson, Office of Laurel E. Henderson, Decatur, GA, for City of Douglasville, Georgia, defendant.

### ORDER

MARTIN, District Judge.

This action, challenging the constitutionality of the City of Douglasville's sign ordinance, is before the court on: (1) the plaintiff's motion for partial summary judgment [Doc. No. 11–1]; (2) the plaintiff's motion for a preliminary injunction [Doc. No. 12–1]; (3) the plaintiff's motion for a perma-

nent injunction [Doc. No. 12–2]; (4) the defendant's motion for summary judgment [Doc. No. 13–1]; (5) the defendant's motion for hearing [Doc. No. 16–1]; and (6) the plaintiff's motion for consideration of delayed filing [Doc. No. 20–1].

### I. Factual and Procedural Background

In this action, the plaintiff, Lamar Advertising Company ("Lamar"), challenges the City of Douglasville's ("Douglasville" or "the City") sign ordinance as an unconstitutional restriction on the freedom of speech. Under the City's current sign ordinance, most signs must be permitted prior to display. To obtain a permit, a party must submit an application to the City. Lamar, a company in the business of buying or leasing land upon which to construct signs containing commercial and noncommercial messages, asserts that it has submitted several applications for sign permits to Douglasville authorities. However, each of these applications has been denied. Although the parties dispute the reason for the denial, no one disputes the fact that Lamar cannot lawfully erect its desired signs given the language of the current ordinance.

In order to challenge Douglasville's ordinance, Lamar filed the instant lawsuit. After some discovery, on February 10, 2003, Lamar filed a motion for summary judgment. Therein, Lamar presents a facial challenge to the constitutionality of the Douglasville sign ordinance. On the same day it filed the summary judgment motion, Lamar also moved for a preliminary or permanent injunction to prevent the City from enforcing its allegedly unconstitutional sign regulations. In response, Douglasville filed a cross-motion for summary judgment, asserting that its sign ordinance is constitutional. However, on March 17, 2003, after the parties filed their cross-motions for summary judgment, the Doug-

lasville City Council amended the City's sign ordinance, making some significant changes. In light of these revisions, the court now addresses the outstanding motions.

## II. Summary Judgment Standard

Summary judgment is proper "if ... there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* In this case, both parties believe that summary judgment is a proper vehicle to resolve their dispute.

## III. Facial Challenge to Ordinance

 To begin with, the court notes that Lamar raises a facial challenge to the Douglasville sign ordinance.[1] A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir.2001); *Naturist Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1521 (11th Cir.1992). Al-

though facial challenges are generally disfavored, they are permitted where a licensing scheme vests unbridled discretion in a decisionmaker. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Accordingly, the Supreme Court has allowed those who have not applied for licenses to facially challenge licensing statutes, where those statutes effectively provide public officials the power to censor free expression based on the content of the speaker's planned message.[2] *United States v. Frandsen*, 212 F.3d 1231, 1235–36 (11th Cir.2000); *Abramson v. Gonzalez*, 949 F.2d 1567, 1572–73 (11th Cir.1992). The use of signs, containing both commercial and noncommercial speech, is an important method of free expression. *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994); *Messer v. City of Douglasville*, 975 F.2d 1505 (11th Cir.1992). The Supreme Court has recognized that parties, such as Lamar, with a commercial interest in speech may facially challenge an ordinance, raising the noncommercial speech interests of third parties. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). In this special First Amendment context, even the City concedes that Lamar has "standing to challenge the entire ordinance." Def.'s Opp'n Mem., p. 15. Because, in the instant lawsuit, Lamar asserts that Douglasville's licensing statute vests unbridled discretion in city officials

---

1. At the outset, the court notes that Lamar's filings with the court fail to comply with Local Rules 5.1 and 7.1. Lamar has exceeded the allowable page limitation, failed to include certifications of font, and utilized small margins. Although the court exercises its discretion to overlook these deficiencies for the purpose of this order, such deficiencies will not be overlooked in the future. The court DIRECTS Lamar to familiarize itself with the Local Rules of this court. Further submissions not in compliance with the Local Rules will be stricken from the record.

2. Because a facial challenge can be raised whether or not Lamar has properly applied for sign permits and variances, the parties' factual dispute regarding Lamar's completion of its permit applications is immaterial to the resolution of the issues before the court. *See City of Lakewood v. Plain Dealer Publishing, Inc.*, 486 U.S. 750, 755, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Naturist Soc., Inc.*, 958 F.2d at 1521.

to permit or deny expressive activity, Lamar has standing to challenge Douglasville's ordinance on its face.[3] *City of Lakewood,* 486 U.S. at 755, 108 S.Ct. 2138.

## IV. *First Amendment Analysis*

▉▉▉ According to the First Amendment, the government "shall make no law ... abridging the freedom of speech ...." U.S. Const. amend. I. Because of this fundamental right to freedom of speech, state and local governments must carefully craft any law that constitutes a "prior restraint" on speech. *Frandsen,* 212 F.3d at 1236–37. Defining prior restraint as a regulation that allows the government to "deny access to a forum for expression before the expression occurs," the Eleventh Circuit recognizes licensing schemes as one form of prior restraint. *Id.; Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1361 (11th Cir.1999). Although a prior restraint, such as a licensing scheme, is not *per se* unconstitutional, any system of prior restraint carries "a heavy presumption against its constitutional validity." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). However, systems of prior restraint limiting noncommercial speech will be upheld as constitutional, if they constitute content-neutral time, place, and manner regulations.

3. In reviewing Douglasville's sign ordinance, the court notes that the state of the law in this area is somewhat uncertain. *See Metromedia, Inc.,* 453 U.S. at 570, 101 S.Ct. 2882 (Rehnquist, J., dissenting, describes the plurality opinion as a "virtual Tower of Babel, from which no definitive principles can be clearly drawn"); *Granite State Outdoor Adver., Inc. v. City of Clearwater,* 213 F.Supp.2d 1312, 1327 (M.D.Fla.2002) (stating that, in the area of sign regulations, "constitutional law on the subject is far from clear"). This is especially so, given the Supreme Court's recent decision in *Thomas v. Chicago Park District,* 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). Because of the uncertain state of the law, the court recognizes the challenge Douglasville

*Thomas v. Chicago Park Dist.,* 534 U.S. 316, 322–24, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002).

In section 3.75.01(a) of Douglasville's sign ordinance, the City provides that "no sign shall be erected, reconstructed, expanded, or replaced without securing a permit from the director of planning and zoning ...." Douglasville, Ga., Zoning Ord., § 3.75.01(a). To obtain a permit, an interested party must submit an application to the director of planning and zoning. *Id.* at § 3.75.03. The director is then responsible for granting or denying a permit. As such, the Douglasville sign ordinance is, at its heart, a licensing scheme. *See Messer,* 975 F.2d at 1505. Because the Douglasville ordinance qualifies as a licensing scheme regulating both commercial and noncommercial speech, the court must determine if it is a constitutional prior restraint on speech.

### A. *Unbridled Discretion*

▉▉▉ To comport with the First Amendment, permitting schemes affecting protected expression cannot place "unbridled discretion" in the hands of a government official. *FW/PBS, Inc.,* 493 U.S. at 225–26, 110 S.Ct. 596; *Thomas,* 534 U.S. at 323–24, 122 S.Ct. 775. As early as 1958, the Supreme Court held that:

local lawmakers face when trying to craft a constitutional ordinance. *Granite State Outdoor Adver., Inc.,* 213 F.Supp.2d at 1327. A so-called "catch-22" of sign ordinances was recently explicated by a district court in Florida. *Id.* at 1328 (stating that because one Supreme Court decision requires that "for-sale" signs be allowed under all circumstances, but other Supreme Court decisions prohibit content-based review of sign applications, it may be impossible to craft a constitutional ordinance). This same court found that "it is truly a Herculean task to wade through the mire of First Amendment opinions to ascertain the state of the law relating to sign regulations." *Id.* at 1327.

It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958)). To avoid unbridled discretion, "[a]n ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they must make their decisions." *Lady J. Lingerie, Inc.*, 176 F.3d at 1361. These criteria must be "narrow, objective, and definite." *Shuttlesworth*, 394 U.S. at 151, 89 S.Ct. 935; *see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 132–33, 112 S.Ct. 2395, 120 L.Ed.2d 101. "[A]ny amount of discretion beyond the merely ministerial is suspect." *Lady J. Lingerie, Inc.*, 176 F.3d at 1362.

■ Based on this standard, it is clear that some provisions of the Douglasville sign ordinance place unbridled discretion within the hands of the director of planning and zoning. Importantly, the Douglasville ordinance provides that a variety of signs are subject to blanket prohibition throughout the city. Douglasville, Ga., Zoning Ord., § 3.72.03. Signs prohibited in Douglasville include those imitating traffic signals, incorporating flashing lights, emitting sound, and constituting flags, banners, or portable display signs. Douglasville, Ga., Zoning Ord., § 3.72.03. However, some of these prohibited signs may be approved for display by the director of planning and zoning if "permitted as a temporary sign in a district where temporary signs are authorized." *Id.* The director of planning and zoning has complete discretion in determining whether a temporary sign permit may be issued. The provisions relating to temporary signs do not limit the director's discretion in any way. *Id.* at § 3.72.04. In each provision, the director is "authorized" to issue a temporary sign permit.[4] *Id.* However, nothing dictates that a temporary sign permit must issue or be denied based on precise and objective criteria. *Id.* Because many types of signs can qualify as temporary signs, and no precise and objective criteria define when temporary sign permits should issue, the Douglasville director of planning and zoning has unbridled discretion to permit or prohibit expressive activity. *Gold Coast Publ'ns, Inc. v. Corrigan*, 42 F.3d 1336, 1348 (11th Cir.1994). Therefore, the City's sign ordinance provisions regarding temporary signs are unconstitutional prior restraints on the freedom of speech. *Forsyth County*, 505 U.S. at 133, 112 S.Ct. 2395. Nothing in the law prevents the City from encouraging some views and

---

4. For example, in section 3.72.04(d), "[t]he director of planning and zoning is hereby authorized to issue a temporary permit for banners attached to or adjacent to a building or structure." However, this "authoriz[ation]" does not clarify the standards the director should use to determine which temporary permits should issue. Clearly, this provision does not require the director to issue a permit to everyone who applies to post a banner. For instance, the court presumes that banners that would block street lights or other traffic signs would not be approved on a temporary permit. As such, some decision is going to be made about whether to allow a banner to be posted. Because there are no objective standards and criteria for the director of planning and zoning to use in making these decisions, the director, in effect, has unbridled discretion in granting and denying temporary sign permits.

discouraging others through the arbitrary grant or denial of temporary sign permits. *Id.; see also Granite State Outdoor Adver., Inc.,* 213 F.Supp.2d at 1338–39 (finding city's temporary permit provisions allowed city manager an unconstitutional level of discretion).

▆▆▆ The court notes that the March 17, 2003 amendment to the Douglasville sign ordinance does not remedy this discretionary problem.[5] In relevant part, the amendment provides that "[a]ll applications meeting the standards of the Zoning Code shall be granted." Douglasville, Ga., Develop. Code, § 9.09(a). Importantly, this amendment clarifies that the discretion of the director of planning and zoning is limited to applying those standards outlined in the sign ordinance. However, the amendment does not provide standards for the director of planning and zoning to employ where none are listed in the original ordinance. As previously described, the temporary sign permit provisions do not contain objective standards for the director of planning and zoning to utilize in determining whether to grant or deny a sign permit. Douglasville, Ga., Zoning Ord., § 3.72.04. Accordingly, the March 17, 2003 amendment does not remedy the constitutional infirmity in the temporary sign provisions.

▆▆▆ Moreover, under Eleventh Circuit precedent, the Douglasville sign ordinance grants the City too much discretion in determining when to permit a variance from applicable sign regulations. *See Lady J. Lingerie, Inc.,* 176 F.3d at 1362. In *Lady J. Lingerie,* the Eleventh Circuit held that traditional criteria for granting or denying zoning variances are insufficiently precise and objective when applied to parties engaged in First Amendment protected expression. *Id.* Accordingly, in the Eleventh Circuit, ordinances emphasizing environmental and compatibility considerations cannot be utilized to grant or deny variances to parties attempting to engage in activity protected by the First Amendment, such as posting signs including commercial and noncommercial speech. *Id.* Importantly, the criteria criticized in the *Lady J. Lingerie* ordinance are nearly identical to the criteria delineated in Douglasville's zoning variance provisions. Douglasville, Ga., Zoning Ord., § 6.03.02. Under section 6.03.02, City officials are to consider the value of the surrounding property, the environment of the surrounding property, the public good, and the purpose of the zoning ordinance before granting or denying a variance. Pursuant to *Lady J. Lingerie,* the breadth of these criteria provides the City unbridled discretion in granting and denying the right to post signs. 176 F.3d at 1362; *see also Shuttlesworth,* 394 U.S. at 150–151, 89 S.Ct. 935 (holding that criteria such as public welfare, peace, safety, health, decency, good order, morals, and convenience are insufficient to curtail an official's discretion in granting parade permits).[6]

---

5. The March 17, 2003 amendment does not moot Lamar's challenge. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301 (11th Cir.2000) (finding that when a subsequent enactment replaces a challenged statute, a case is only moot to the extent that the new enactment removes the challenged features of the prior law).

6. As noted by the Eleventh Circuit in *Lady J. Lingerie,* "the City may still use [these criteria] for applicants who are not entitled to First Amendment protection." 176 F.3d at 1362. For example, these criteria would be constitutional as applied to subdivision building permit applications, although they are unconstitutional as applied to sign permits. In essence, if Douglasville is going to allow variances from the sign regulations, the City needs to promulgate distinct variance review criteria specific to signs, which do not pose a danger of content-based discrimination.

■ Similar to the provisions governing variance approvals, too much discretion is also vested in the Historic District Preservation Commission ("Commission") to approve or deny signs for display in the historic district of the City. Specifically, signs posted in the historic district must be approved by the Commission. Douglasville, Ga., Zoning Ord., § 3.73.04. Although the sign ordinance provides that the Commission shall "establish guidelines for color, size and design of signs which can be approved for use within the historic district," there is no indication in the record that the Commission has done so. *Id.* at § 3.73.04(b)(2). Instead, it appears that the Commission relies only upon the standards described in the Historic Preservation Ordinance, which governs all structural changes within the historic district. Douglasville, Ga., Historic Preservation Ord., § 48–5(f). Appropriate considerations under the Historic Preservation Ordinance include the "effect on the aesthetic, historic, or architectural significance and the value of the historic property," as well as "any design review guidelines which may be developed by the commission." *Id.* at § 48–5(f)(1). These standards, unlike objective standards regarding size, shape, or height, allow the Commission significant discretion in approving signs. *See Lady J. Lingerie, Inc.,* 176 F.3d at 1362. Because these standards cannot be distinguished from those held unconstitutional in *Lady J. Lingerie,* the court finds that the Commission has unbridled discretion in approving signs in the historic district. *Id.* More precise and objective standards must be developed to make the ordinance constitutional.

For these reasons alone, the Douglasville sign ordinance invests public officials with unconstitutional levels of discretion. Too much discretion is given the director of planning and zoning in permitting temporary signs, too much discretion is given the Historic Preservation Commission regarding those signs posted within the historic district, and too much discretion is given various City officials in the variance approval procedure. Thus, these provisions of the Douglasville sign ordinance are unconstitutional prior restraints on the freedom of speech.

■ In addition to the temporary sign and variance approval provisions, Lamar argues that other provisions of the City's sign ordinance are unconstitutional due to unbridled discretion invested in government officials. For example, Lamar points to the City's "Public Service Sign Policy." This independent policy, which is not part of the City's sign ordinance, allows Douglasville to erect "signs at certain strategic places inside the corporate limits of the City which shall serve to indicate the proper direction to places of interest, both public and private, located within the City of Douglasville and Douglas County." The policy goes on to provide that "[t]he placement of these signs shall be at the sole discretion of the City in terms of both location and number of signs." Although there is an argument that this policy, on its face, provides significant discretion to government employees, this policy is independent from the sign ordinance. At no point does it reference the City's sign regulations. Because the public service sign policy is not incorporated into the Douglasville sign or zoning ordinances, Lamar cannot challenge this policy, as it does not have standing to do so. Lamar's facial challenge is limited to the sign ordinance and other provisions of the zoning ordinance incorporated therein. As it is undisputed that Lamar has not been affected or injured by the public service sign policy, the court expresses no opinion on the constitutionality of that policy.

## B. *Content–Based Regulations*

 In addition to restricting the discretion of licensing officials through objective standards, prior restraints must be content-neutral in order to be constitutional. *Frandsen,* 212 F.3d at 1238. For years, the Supreme Court has reiterated that "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Regan v. Time, Inc.,* 468 U.S. 641, 648–49, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); *see also Forsyth County,* 505 U.S. 123, 135, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 230, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). As such, fees and applications cannot depend on the content of the speech involved. *See Forsyth County,* 505 U.S. at 134, 112 S.Ct. 2395. Therefore, any prior restraint on speech is constitutional only if it is administered "without reference to the content of the regulated speech." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 428, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). Accordingly, the government is permitted to regulate speech through sign ordinances, as long as they are not content-based. *Metromedia Inc.,* 453 U.S. at 511–12, 101 S.Ct. 2882.

In *Dimmitt v. City of Clearwater,* the Eleventh Circuit applied these standards to invalidate a provision of the City of Clearwater's sign ordinance. 985 F.2d 1565, 1568 (11th Cir.1993). The plaintiff challenged an exception to the city's permit requirement, which allowed certain flags to be placed on both residential and nonresidential property without a permit. *Id.* Notably, the exception applied only if a property owner posted flags "represent[ing] a governmental unit or body." *Id.* at 1569. Based on a plain reading of the statute, the Eleventh Circuit noted that "the display of the American flag or that of the State of Florida would be exempted from the permit process while a flag displaying the Greenpeace logo or a union affiliation would require a permit." *Id.* The Eleventh Circuit found this content-based distinction impermissible under the First Amendment. *Id.* at 1569–70. The court held that "a municipality may not accomplish its purposes in promoting aesthetics and traffic safety by restricting speech depending upon the message expressed." *Id.* at 1570.

In language strikingly similar to that held unconstitutional in *Dimmitt,* the Douglasville sign ordinance provides that, in the historic district, "[b]anners, pennants and streamers along or across road rights-of-way" are prohibited; however, an exception is made for "flags or banners of the United States or other political subdivisions thereof." Douglasville, Ga., Zoning Ord., § 3.73.04(e)(2). Under this provision, like the provision in *Dimmitt,* the display of the American flag or the flag of the State of Georgia would be allowed in the City's historic district, while a flag displaying a Greenpeace logo or a union affiliation would be prohibited. *See Dimmitt,* 985 F.2d at 1569. On its face, this provision, like the provision in *Dimmitt,* draws a content-based distinction between different types of banners, flags, and pennants. Accordingly, it is unconstitutional. *Id.* at 1568–70.

 In addition to the distinction drawn between government and other types of flags, Douglasville has also promulgated impermissible content-based distinctions in its sign fee schedule. *See Forsyth County,* 505 U.S. at 134, 112 S.Ct. 2395. Both parties concede that, pursuant to section 3.75.03(g), the City charges variable fees for different types of signs. Portable display signs cost $200.00, political signs cost $25.00, temporary signs cost

$25.00, and nonconforming use signs cost $15.00. All other types of signs have a base fee of $35.00, with an additional charge per square foot. The problem with the City's sign fee schedule is that signs classified as "political" uniformly cost $25.00.[7] Under the current scheme, political signs, no matter how large or how small, remain $25.00. In contrast, the cost of signs bearing nonpolitical messages varies based on size. The ordinance provides no definition of "political signs," and the City has offered no explanation for this sign fee differential. Accordingly, the current fee schedule dictates that a sign application be reviewed for content to determine the appropriate amount to be charged. Therefore, the fee schedule "requires that the fee be based on the content of the speech." *Forsyth County*, 505 U.S. at 134, 112 S.Ct. 2395. This requirement is impermissible and unconstitutional under the First Amendment.[8] *Id.*

Because limitations on protected expression such as noncommercial speech must be content-neutral, the provisions of the City ordinance governing flag display in the historic district and setting fees for different types of signs are violative of the First Amendment. Douglasville cannot continue to apply these provisions.

However, Lamar argues that a variety of other provisions in the Douglasville sign ordinance constitute impermissible content-based regulations. In so arguing, Lamar challenges the ordinance provisions allowing government signs within the public right-of-way, drive-through menu boards, subdivision designations, and directional signs. Douglasville, Ga., Zoning Ord., §§ 3.72.03(a), 3.73.02(a)(3), (d), (e). Despite this challenge, none of the provisions described by Lamar define permissible signs based on their content. *See Granite State Outdoor Adver., Inc.*, 213 F.Supp.2d at 1336. "These sign categories are not an attempt to censor speech or enforce regulations based on viewpoint—[these types of signs have] no viewpoint, [they] merely relay factual information." *Id.* As such, these regulations are not an attempt to censor speech or regulate expression. *Id.* In *Messer v. City of Douglasville*, the Eleventh Circuit applied a similar analysis and found that regulations exempting "for sale" signs, construction identification signs, and directional traffic signs "do not favor commercial over noncommercial speech, neither do they express a preference between different noncommercial messages." 975 F.2d at 1513. Accordingly, the Douglasville regulations regarding drive-through menu boards, governmental signs in public rights-of-way, subdivision designations, and directional signs do not constitute impermissible content-based regulations of speech. *Id.*

---

7. Throughout its briefing to the court, Lamar consistently argues that the City ordinance favors political campaign signs and, therefore, is an unconstitutional, content-based speech regulation. In making this argument, Lamar misconstrues the language of the sign ordinance. For each type of property, the Douglasville ordinance allows one "standard informational sign" without a permit any time during the year. *See* Douglasville, Ga., Zoning Ord., §§ 3.73.01(b)(2), 3.73.02(c), 3.73.03(b), 3.73.04(d)(3). During election periods, however, "an unlimited number of standard informational signs are allowed." *Id.* Accordingly, the ability to post an in-

creased number of signs during election periods extends to all standard informational signs and not just to election campaign signs. There is no content-based favoritism, and Lamar's argument to the contrary fails.

8. The court also notes that the mayor and city council have unlimited discretion in setting the application fees for sign permits under the current Douglasville ordinance. In section 3.75.03(g), the appropriate application fees are to be "set by the mayor and council from time to time." However, at no point does the ordinance define how the mayor and council are to arrive at appropriate application fees.

## C. *Requisite Procedural Safeguards*

██ Lamar also argues that, under the First Amendment, licensing schemes affecting freedom of speech must provide adequate procedural safeguards to applicants. *See, e.g., FW/PBS, Inc.,* 493 U.S. at 226, 110 S.Ct. 596. Lamar bases this argument on the Supreme Court's holding in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman v. Maryland,* the Supreme Court addressed a movie censorship system that failed to provide adequate procedural safeguards to ensure against unlimited suppression of constitutionally protected speech. 380 U.S. at 51, 85 S.Ct. 734. The Supreme Court recognized that licensing schemes that give an official the authority to censor the content of speech create the possibility that constitutionally protected speech will be suppressed, if there are no time limits ensuring prompt issuance of a license. *Id.* Accordingly, where licensing schemes allow government officials to censor the content of speech, the Court held that definite time limits are necessary because "delay compels the speaker's silence." *Riley v. National Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 802, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). Where a licensor has unlimited time within which to issue a license, the Court held that "the risk of arbitrary suppression is as great as the provision of unbridled discretion." *FW/PBS, Inc.,* 493 U.S. at 227, 110 S.Ct. 596.

Although the court understands Lamar's argument, the Supreme Court recently refined the applicability of *Freedman. See Thomas,* 534 U.S. at 322–23, 122 S.Ct. 775. In *Thomas v. Chicago Park District,* the Supreme Court evaluated the constitutionality of a park ordinance that required permits for all events involving fifty or more persons. *Id.* at 318, 122 S.Ct. 775. Justice Scalia, writing for the Court, held

that *Freedman* was "inapposite" to the controverted Chicago licensing scheme. *Id.* at 322, 122 S.Ct. 775. He found that the Supreme Court has "never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman.*" *Id.* Instead, where a "content-neutral time, place, and manner regulation of the use of a public forum is at issue," Justice Scalia found *Freedman* to be completely inapplicable. *Id.* at 322–23, 122 S.Ct. 775.

Accordingly, to ascertain the applicability of the *Freedman* procedural safeguards to the Douglasville sign ordinance, the court must determine if *Freedman* or *Thomas* governs the instant lawsuit. Reviewing the types of licensing schemes involved in these Supreme Court cases, the court believes that the *Thomas* holding clearly governs the Douglasville ordinance. Importantly, the *Freedman* censorship scheme provided that all motion pictures be submitted to a government censor for review prior to being licensed for performance in the city. 380 U.S. at 56–58, 85 S.Ct. 734. The censor was specifically meant to review the content of the proposed film prior to its release. *Id.* In contrast, the regulation in *Thomas* involved a time, place, and manner restriction on the use of Chicago public parks. 534 U.S. at 322, 122 S.Ct. 775. Unlike the motion picture censorship ordinance in *Freedman,* the park ordinance in *Thomas* did not authorize a licensor to pass judgment on the content of speech. Instead, the *Thomas* scheme was limited to "considerations of public safety and the like." *Id.*

Like the scheme in *Thomas,* the permitting scheme developed by Douglasville is intended to be a content-neutral time, place, and manner restriction. Nowhere in the permit application process does the

City require revelation of the content of the proposed sign. As such, the ordinance is intended to protect the safety of Douglasville citizens and preserve the aesthetics of the area. Although the ordinance can be characterized as content-based in some limited respects, it is difficult to compare the City sign ordinance with the outright censorship scheme developed in *Freedman*. Moreover, with the amendment promulgated on March 17, 2003, the City has delineated specific time limits for the approval and denial of sign permits. As such, the concerns raised by Lamar regarding the *Freedman* procedural safeguards have largely been resolved.

Thus, this court finds that the procedural safeguards promulgated in *Freedman* are inapposite to the instant lawsuit. In so doing, the court recognizes that "[a] licensing standard which gives an official authority to censor the content of a speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like." *Thomas*, 534 U.S. at 322–23, 122 S.Ct. 775 (quoting *Niemotko v. Maryland*, 340 U.S. 268, 282, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (Frankfurter,J., concurring in result)).

#### D. *Georgia Constitution*

 Throughout its arguments to the court, Lamar emphasizes that the Georgia Constitution provides greater protection to speech than the United States Constitution. *See* Ga. Const. of 1983, art. I, § I, ¶ V (providing that "[n]o law shall be passed to curtail or restrain the freedom of speech or of the press"). The court agrees. In several cases, the Georgia Supreme Court has held that the Georgia

"state constitution provides even broader protection of speech than the first amendment." *Statesboro Pub. Co. v. City of Sylvania*, 271 Ga. 92, 95, 516 S.E.2d 296, 299 (1999); *State v. Miller*, 260 Ga. 669, 671, 398 S.E.2d 547, 550 (1990). However, in analyzing sign ordinances, Georgia courts have consistently applied United States Supreme Court precedent, drawing no analytical distinction between the state and federal constitutions. *State v. Cafe Erotica, Inc.*, 270 Ga. 97, 507 S.E.2d 732 (1998); *Union City Bd. of Zoning App. v. Justice Outdoor Displays, Inc.*, 266 Ga. 393, 467 S.E.2d 875 (1996); *H & H Operations, Inc. v. City of Peachtree City*, 248 Ga. 500, 283 S.E.2d 867 (1981). Therefore, the greater speech protections provided in the Georgia Constitution do not change the court's prior analysis of the Douglasville sign ordinance. *See Southlake Prop. Assocs., Ltd. v. City of Morrow*, 112 F.3d 1114 (11th Cir.1997) (applying only federal constitutional analysis where plaintiff challenged sign ordinance under United States and Georgia constitutions); *Outdoor Sys., Inc. v. City of Atlanta*, 885 F.Supp. 1572, 1584 (N.D.Ga.1995) (O'Kelley, J.) (finding that sign ordinance satisfied free speech requirements of Georgia Constitution where it satisfied free speech requirements of federal constitution).

#### E. *Constitutionality of the Remainder of the Ordinance*

 Without the provisions described above as constitutionally offensive, the court finds that the remainder of the ordinance is a constitutional time, place, and manner regulation.[9] "Time, place and manner restrictions are permissible if 'they are justified without reference to the

---

9. In this litigation, the sign regulations promulgated by the City undisputedly affect both commercial and noncommercial speech. Accordingly, the court does not utilize the more limited constitutional analysis made applicable to purely commercial speech under *Central Hudson Gas v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

content of the regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information.'" *Messer v. City of Douglasville*, 975 F.2d 1505, 1510 (11th Cir.1992) (quoting *Virginia St. Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)). Accordingly, to uphold a viewpoint neutral regulation of speech, the City must show that: (1) it has the constitutional power to make the regulation; (2) an important or substantial government interest unrelated to the suppression of free speech is at stake; and (3) the ordinance is narrowly drawn to achieve its desired ends, leaving other channels for the communication of information. *Id.*

▰ In the Eleventh Circuit, "[i]t is well settled that the state may legitimately exercise its police powers to advance aesthetic interests." *Id.* (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). "Under its police power authority, a municipality can enact and enforce reasonable regulations governing the erection and maintenance of signs within its jurisdiction." *City of Doraville v. Turner Communications Corp.*, 236 Ga. 385, 387, 223 S.E.2d 798, 800 (1976). Thus, Douglasville clearly "has the constitutional

power to make the regulation" at issue in this case. *Messer*, 975 F.2d at 1510.

In the Eleventh Circuit, "[i]t is also well settled that both traffic safety and aesthetics are substantial governmental goals." *Id.; see also Southlake Prop. Assocs., Ltd.*, 112 F.3d at 1116 (recognizing Morrow's right to "clean, aesthetically pleasing and safe business thoroughfares"); *Harnish v. Manatee County, Fla.*, 783 F.2d 1535 (11th Cir.1986) (upholding "prohibition of portable signs to eliminate aesthetic blight passed muster under the First Amendment"). Moreover, the Eleventh Circuit recognizes a heightened governmental interest "in the aesthetics of designated historical areas." *Messer*, 975 F.2d at 1510 (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 107–08, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). Because public safety, traffic safety, health, welfare, and aesthetics are the stated goals of the Douglasville ordinance,[10] the City has shown that "an important or substantial government interest unrelated to the suppression of free speech is at stake." *Messer*, 975 F.2d at 1510.

Finally, the court must decide whether this ordinance is sufficiently narrowly drawn, leaving open ample channels of communication of noncommercial messages. *Id.* at 1510–11. Under the Georgia

---

**10.** In section 3.71.02, the City describes the objectives of the sign ordinance:

 a. The purpose of the sign ordinance of the city is to recognize that although signs and advertising are proper and necessary uses of private property, are a means of personal free expression, and constitute a legitimate business entitled to the protection of the law, such signs and advertising should be reasonably regulated in the interest of public safety and welfare, and aesthetic concerns by the establishment of standards for the location, size, district, illumination, number, construction and maintenance of all signs and advertising structures in the city.

 b. In order to protect the public safety, to assure compatibility of signs with surrounding land uses, to enhance the business and economy of the city, to protect the public investment in the streets and highways, to maintain the tranquil environment of residential areas, to promote industry and commerce, to provide an aesthetically appealing environment, and to provide for the orderly and reasonable display of advertising for the benefit of all its citizens, the city council hereby determines that the public health, safety and welfare, and to eliminate visual clutter and blight, require the adoption of this division.

Constitution, this requires a finding that the Douglasville ordinance "suppress[es] no more speech than is necessary to achieve the city's goals." *Statesboro Pub. Co.*, 271 Ga. at 92, 516 S.E.2d at 299. Douglasville's sign ordinance classifies property by use and then sets out the regulations pertaining to each category of use. The City has four classifications of property: (1) developed residential property; (2) other developed property; (3) vacant and undeveloped property; and (4) the historic district. Douglasville, Ga., Zoning Ord., § 3.73. Within each category, allowable signs are listed by type. Maximum sign size, height, and setback distances are provided, along with the number of permitted signs. *Id.* Definitions for allowable sign types are found in article eight of the zoning ordinance, and each definition is content-neutral. For instance, the definition of billboard references the sign face area and the manner of installation. Douglasville, Ga., Zoning Ord., § 8.24.01. A building sign is defined with reference to the point of attachment. *Id.* at § 8.33.01. Freestanding sign is defined with respect to sign face area and manner of installation. *Id.* at § 8.64.01. As the intensity of property use increases, the allowable number of signs also increases. *Id.* at § 3.73. However, all property owners are permitted some form of signage.

As noted by the City, but ignored by Lamar, an important feature of the City's ordinance is the standard informational sign. This type of sign is defined in terms of its size and method of display. *Id.* at § 8.184.01. Standard informational signs are allowed without a permit or fee on all types of property—even the City's historic district. Any owner or possessor of property has the ability to erect at least one standard informational sign at all times. Accordingly, a fundamental method of communication is always open in Douglasville. *See City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

Moreover, the regulations regarding standard informational signs are relaxed prior to elections and over weekends. During elections and weekends, an unlimited number of standard informational signs are permitted on all types of property. Notably, these exceptions are content-neutral. They are not limited to campaign signs, or any other particular type of sign, but encompass standard informational signs containing any message.

This content neutral regulatory framework permits an owner or occupant of property to have his or her message heard, while limiting the number and size of signs so that each can be seen, and requiring uniform setbacks to maintain clear visibility for pedestrians and vehicular traffic. An individual's right to free expression is consistently maintained, such that ample alternative channels of communication always exist. *Messer*, 975 F.2d at 1511. Limiting the number and size of signs benefits the public through cleaner thoroughfares, and benefits individuals and businesses by allowing their signs to be seen in an orderly manner. Traffic confusion is attenuated and public safety is enhanced. In this manner, the Douglasville ordinance is sufficiently narrowly drawn. *Id.* In fact, because the restrictions vary based on property type and use, the ordinance is no more restrictive than necessary to accomplish the City's goals. *See Statesboro Pub. Co.*, 271 Ga. at 95, 516 S.E.2d at 296 (finding that Georgia Constitution requires time, place and manner restrictions to be as narrowly tailored as possible). Accordingly, the City's sign ordinance, without the five provisions found to be unconstitutional, is a constitutionally-valid, viewpoint neutral, time, place, and manner restriction. *Id.*

### F. Severability of Unconstitutional Provisions

Because the court has found that some of the provisions of the City's sign ordi-

nance are unconstitutional, the court must decide whether the unconstitutional provisions can be severed from those found to be constitutional. The City argues that the court can sever those provisions found to be unconstitutional from the remainder of the ordinance and leave the constitutional provisions of the ordinance intact. In so arguing, Douglasville relies on the severability clause of the zoning ordinance, which provides:

> If any article, section, subsection, paragraph, subparagraph, sentence, clause, phrase or portion of this zoning ordinance ... is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed as a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions of this zoning ordinance ....

Douglasville, Ga., Zoning Ord., § 1.02.02. The City believes that the offensive portions can be stricken, as the purpose of the ordinance is served even without those provisions. Lamar, on the other hand, believes that the constitutional deficiencies in the City's sign ordinance are so pervasive that the ordinance, as a whole, must be stricken. According to Lamar, it is not for this court to rewrite the licensing scheme promulgated by the Douglasville City Council.

The parties agree that Georgia law governs whether the unconstitutional provisions of the Douglasville ordinance can be severed from the constitutional provisions. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (finding that severability of a local ordinance is a question of state law); *see also Smith v. Butterworth*, 866 F.2d 1318 (11th Cir.1989); *Hershey v. City of Clearwater*, 834 F.2d 937 (11th Cir.1987). In Georgia:

> When a statute cannot be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose.

*Elliott v. State,* 91 Ga. 694, 696, 17 S.E. 1004 (1893); *City Council of Augusta v. Mangelly,* 243 Ga. 358, 363, 254 S.E.2d 315, 319–20 (1979). Under federal and state law, the inclusion of a severability clause within a statute or ordinance creates a presumption in favor of severance. *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Chambers v. Peach County, Ga.,* 268 Ga. 672, 492 S.E.2d 191 (1997); *Mangelly,* 243 Ga. at 363, 254 S.E.2d at 320. However, "for one part of a statute to be upheld as severable when another is stricken as unconstitutional, they must not be mutually dependent on one another." *Id.; see also State v. Jackson,* 269 Ga. 308, 496 S.E.2d 912 (1998). Accordingly, the court must assess, with due regard to the presumption favoring severability, whether the unconstitutional provisions in the Douglasville ordinance can be severed from the remainder of the ordinance. By doing so, the court fulfills the duty assigned to it by the Supreme Court in *Regan v. Time, Inc.,* 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality opinion) (holding that "whenever an act of Congress contains unobjectionable provisions separable from those found to be constitutional, it is the duty of th[e] court to so declare, and to maintain the act in so far as it is valid").

In *Union City Board of Zoning v. Justice Outdoor Displays, Inc.,* the Supreme Court of Georgia evaluated the constitutionality of Union City's sign ordinance. 266 Ga. 393, 467 S.E.2d 875 (1996). The court found that a variety of the provisions of the sign ordinance violated the First Amendment. *Id.* at 394, 467 S.E.2d at 878. Specifically, the court invalidated the pro-

visions of the Union City ordinance distinguishing between on-premise and off-premise signs, restricting content on residential signs, restricting the display of political signs, and prohibiting obscene words and pictures. *Id.* at 394–403, 467 S.E.2d at 878–883. Despite invalidating these significant portions of the sign ordinance, the court held that severance was appropriate. *Id.* at 404–05, 467 S.E.2d at 884–85. In particular, the court found that the stated purpose of the act—to provide for the public safety and welfare—was still served after these provisions were stricken. *Id.*

In the instant action, this court believes that five parts of the Douglasville sign ordinance are unconstitutional. Namely, the court has invalidated the provisions governing temporary signs, variance reviews, sign fees, flags in the historic district, and review by the Historic Preservation Commission. Although these provisions are unconstitutional, none is "mutually dependent" on other provisions in the ordinance. Instead, each stands alone as a separate and distinct obligation. Because these provisions are independent, each can be severed from the remainder of the ordinance without harming the underlying purpose of the sign ordinance: public safety and aesthetics. Without these provisions, the ordinance continues to effectively addresses the height, placement, number, location, and size of signs that can be erected in Douglasville. "Regardless of the invalidity of the [five unconstitutional provisions] set forth in the ordinance, these [remaining] time, place, and manner regulations work independently thereof to further the city's interests in

public safety and welfare." *Justice Outdoor Displays, Inc.*, 266 Ga. at 404, 467 S.E.2d at 884. By leaving the other provisions of the ordinance in effect, the court furthers the overall purpose of the Douglasville sign ordinance.

Thus, each provision referring to temporary signs is stricken from the sign ordinance.[11] Likewise, the sign fees based on sign content can no longer be enforced. Similarly, the exception for government flags in the historic district is invalidated. However, the variance review procedures in section 6.03 and the procedures for approval by the Historic Preservation Commission in section 48–5(f) need not be stricken entirely. Instead, the court finds that they cannot be utilized to review sign permit applications. More specific and objective standards must be promulgated for the review of sign applications. Until such standards are promulgated, Douglasville cannot require approval by the Commission or permit variances from the language of the zoning ordinance.

## V. *Equal Protection*

 Lamar also challenges the Douglasville ordinance as violative of the Equal Protection Clause of the United States Constitution. The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner. U.S. Const., amend. XIV, § 1. If legislation classifies people in such a way that they receive different treatment under the law, the degree of scrutiny the court applies to the legislation depends on the basis for the classification. *Gary v. City of Warner Robins*, 311 F.3d 1334,

---

11. Where only part of a provision refers to temporary signs, only that part will be removed from the ordinance. For example, section 3.72.03 currently reads, "[t]he following types of signs shall be prohibited unless permitted as a temporary sign in a district where temporary signs are authorized...."

This entire provision need not be invalidated. Instead, only the phrase "unless permitted as a temporary sign in a district where temporary signs are authorized" need be stricken from the section. The remainder of the section stands.

1337 (11th Cir.2002). Where a fundamental right or a suspect class is involved, the court reviews the classification with strict scrutiny. *Id.; see also Mass. Bd. of Ret. v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). "If an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the ordinance must be rationally related to the achievement of a legitimate government purpose." *Joel v. City of Orlando,* 232 F.3d 1353, 1357 (11th Cir.2000).

 In the instant lawsuit, Lamar is not a member of a suspect class, nor does Lamar argue as much. Similarly, the Douglasville sign ordinance does not classify persons based upon any suspect categorization. "Therefore, unless the ordinance infringes on a fundamental right, it will be scrutinized under the rational basis test." *Id.* In this case, Lamar is not exercising a fundamental right. *See Justice Outdoor Displays, Inc.,* 266 Ga. at 400, 467 S.E.2d at 882. Lamar is not attempting to assert its right to engage in a specific type of speech; instead, Lamar is attempting to assert its right to sell advertising space on billboards. Clearly, there is no fundamental right to erect billboards or any other category of sign structure. *See Harnish,* 783 F.2d at 1535; *see also Williams v. Pryor,* 240 F.3d 944, 955 (11th Cir.2001) (finding that "a fundamental right must be objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the right] were sacrificed"). Accordingly, the Douglasville sign ordinance is properly analyzed under the rational basis test applicable to economic regulation. *See Outdoor Sys., Inc.,* 885 F.Supp. at 1582; *Justice Outdoor Displays, Inc.,* 266 Ga. at 400, 467 S.E.2d at 882.

However, where, as here, the court has found that the severed ordinance "passes muster" under the First Amendment, the court need not engage in an independent Equal Protection analysis. *Outdoor Sys., Inc.,* 885 F.Supp. at 1582. As found by the Supreme Court, "[i]f there is a sufficient 'fit' between the legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely adequate under the applicable 'rational basis' equal protection analysis." *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 344 n. 9, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986). Accordingly, if the ordinance satisfies the elements of the *Central Hudson* test for restrictions on commercial speech, as well as the more stringent standards for restrictions on noncommercial speech, then a claim that the ordinance violates the Equal Protection Clause must fail. *Id.; Don's Porta Signs, Inc. v. City of Clearwater,* 829 F.2d 1051, 1054 n. 10 (11th Cir.1987); *Outdoor Sys., Inc.,* 885 F.Supp. at 1582. Thus, the court finds that Lamar's equal protection argument is without merit. *See Granite State Outdoor Adver., Inc.,* 213 F.Supp.2d at 1340 (rejecting equal protection challenges to city sign ordinance).

## VI. *Summary*

In light of the foregoing, Lamar Advertising Company's motions for partial summary judgment [Doc. No. 11–1] and for a permanent injunction [Doc. No. 12–2] are GRANTED IN PART and DENIED IN PART. Likewise, the City of Douglasville's motion for summary judgment [Doc. No. 13–1] is GRANTED IN PART and DENIED IN PART. Further, Lamar Advertising Company's motion for consideration of delayed filing [Doc. No. 20–1] is GRANTED. All other outstanding motions [Doc. No. 12–1, 16–1] are DENIED.

Through this order, most of the Douglasville sign ordinance is upheld as constitutional, but parts are invalidated as unconstitutional. The unconstitutional provisions cannot be enforced and must be severed from the remainder of the sign ordinance: (1) the provisions referring to temporary signs are stricken; (2) the current sign fees cannot be enforced; and (3) the exception for government flags in the historic district is invalidated. Moreover, the variance review procedures and the procedures for approval by the Historic Preservation Commission cannot be utilized to review sign permit applications. More specific and objective standards must be promulgated for the review of sign applications. Until such standards are promulgated, Douglasville cannot require approval by the Commission or permit variances from the language of the zoning ordinance for signs.

Because the provisions of the sign ordinance applicable to Lamar Advertising Company are upheld as constitutional, Lamar is not entitled to a preliminary or permanent injunction allowing it to erect its nonconforming billboards. Lamar is also not entitled to an award of damages. This matter is hereby terminated of record.