THE LAMAR COMPANY,
L.L.C., Plaintiff,

v.

CITY OF MARIETTA, GEORGIA,
and Rusty Roth, Defendants.

Civil Action No. 1:07–CV–00764–BBM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 25, 2008.

Named Expert: Charles F. Floyd.

Edward Adam Webb, Webb & Porter, Matthew C. Klase, The Webb Law Group, LLC, Atlanta, GA, for Plaintiff.

Carl Hugo Anderson, Jr., Sarah Louise Bright, Hawkins & Parnell, Atlanta, GA, for Defendants.

## ORDER

BEVERLY B. MARTIN, District Judge.

This case involving various constitutional claims made regarding the City of Mariet-ta's sign permitting scheme is before the court on (i) the Motion for Partial Summary Judgment [Doc. No. 37], filed by Plaintiff The Lamar Company, L.L.C. ("Lamar"); (ii) the Motion for Summary Judgment [Doc. No. 40], filed by Defendants Rusty Roth ("Mr. Roth") and the City of Marietta (the "City" or "Marietta") (together, "Defendants"); (iii) the Motion to Exclude Expert Testimony of Charles F. Floyd [Doc. No. 44], filed by Lamar ("Lamar's Motion to Exclude"); (iv) the Motion to Exclude Testimony of Plaintiff's Expert Witnesses Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* [Doc. No. 51], filed by Defendants ("Defendants' *Daubert* Motion"); (v) the Notice of Objection and Motion to Strike Certain Exhibits to Plaintiff's Motion for Summary Judgment or, In the Alternative, Motion to Strike Portions of the Declaration of Michael L. Reese and Memorandum of Law In Support Thereof [Doc. No. 56] ("Defendants' Motion to Strike"), filed by Defendants; (vi) the Motion for Leave to File Certified Copy of Marietta Zoning Ordinance [Doc. No. 68], filed by Defendants;[1] (vii) the Motion to Strike Defendants' Reply in Further Support of Their Statement of Material Facts, or, In the Alternative, Motion for Leave to File Reply In Further Support of Plaintiff's Statement of Material Facts [Doc. No. 70], filed by Lamar;[2] and (viii) three Motions for Leave to File Excess Pages [Doc. Nos. 39, 57, 62], all filed by Defendants.[3]

---

1. The Motion for Leave to File Certified Copy of Marietta Zoning Ordinance is granted. The concerns Lamar raised in response to this Motion have been mooted by the court's ruling in Lamar's favor in this Order.

2. The court granted in part the Motion to Strike Defendants' Reply in Further Support of Their Statement of Material Facts, or, In the Alternative, Motion for Leave to File Reply In Further Support of Plaintiff's Statement of Material Facts in a hearing on February 6, 2008. Specifically, the court agreed not to consider Defendants' 141-page Reply to Plaintiff's Response to Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried [Doc. No. 65], but declined to remove the document from the docket. The court also admonished Defendants to adhere to the Local Rules on page limits, but declined to strike the excess pages already filed.

3. The Motions for Leave to File Excess Pages are denied as moot per the hearing of Febru-

## I. Factual Background

On a summary judgment motion, justifiable factual inferences are construed in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiff and Defendants have cross-moved for summary judgment. Unless otherwise noted, the following material facts are not in dispute.

Division 714 of Marietta's City Code (the "Sign Code") is a sign permitting scheme wherein a party "may be required to obtain a permit from the Public Works Department and/or the Department of Planning and Zoning prior to the erection, replacement, reconstruction, or relocation of a sign." (Code of Marietta, Ga., ("Marietta Code") § 714.02(A).)[4] The Sign Code sets forth that among other things, a valid sign permit application must include "[p]lans, specifications and structural details of construction and attachment to the building or in the ground." *Id.* § 714.02(B)(5). The Sign Code proceeds to state: "All signs must conform to the standards of the current National Electrical and Standard Building Codes issued at the time of application and/or other codes of the city that may be applicable." *Id.* The remainder of Sign Code sets forth various sign regulations such as size, height, and location. *Id.* § 714.04. It prohibits certain types of signs altogether, *id.* § 714.06, and exempts others from the permit requirement. *Id.* § 714.03. If a sign owner is not in compliance with the Sign Code, the City may revoke its permit at any time following 5 days' written notice to the owner. *Id.* §§ 714.02(D), 714.07(C). The Sign Code contains no time limits within which a city official must render a decision on a permit application.

Lamar is a Louisiana limited liability corporation that erects and operates advertising signs communicating various messages, both commercial and noncommercial in nature. Lamar has several signs in the City, including a sign located at 1580 Terrell Mill Road and visible from Interstate 75 (the "Sign").

In 1996, the Georgia Department of Transportation issued a permit for the Sign, and authorized it to be a "multiple message" sign. The City also approved the Sign as a multiple message sign at that time, though it now claims that approval was in error. (*See* Aff. of Russell J. Roth, Nov. 30, 2007 ¶¶ 4–5; Aff. of Douglas R. Haynie, Dec. 4, 2007 ¶¶ 4–5.) After the Sign was erected, the Sign's display was a "tri-vision" display that allowed three advertisements on one side, appearing consecutively on rotating prisms. Sometime in or prior to 2004, the Sign was converted to a dual static face.

Then during mid–2006, Lamar decided that the Sign should have a light emitting diode, or "LED," display in light of a recently enacted Georgia statute. Effective July 1, 2006, the Georgia legislature enacted O.C.G.A. § 32–6–75(c), which expressly permits the use of multiple message technologies on signs, such as tri-vision displays and electronic LED displays.[5] The code provides that Section 32–

---

ary 6, 2008. The court considers Defendants' briefs as filed.

**4.** The Sign Code in effect on November 6, 2006 is attached as Exhibit I to Plaintiff's Motion for Partial Summary Judgment.

**5.** The statute provides that "[m]ultiple message signs shall be permitted on the interstate system, primary highways, and other high-

ways" under certain conditions. O.C.G.A. § 32–6–75(c)(1). It also explicitly states that "[n]onmechanical electronic multiple message signs that are otherwise in compliance with this subsection and are illuminated entirely by the use of *light emitting diodes,* back lighting, or any other light source shall be permitted" under certain circumstances. *Id.* § 32–6–75(c)(1)(F) (emphasis added).

6–85(c) does not "abrogate or affect any lawful ordinance ... which is more restrictive." O.C.G.A. § 32–6–97. Lamar requested and received a permit to install an LED unit from the Georgia Department of Transportation.

On November 6, 2006, Lamar applied to Marietta's City Planning and Zoning Department for a permit to erect the LED display.[6] On November 8, 2006, City Planner Lynn Buffkin informed Lamar employee Matt Holloway orally that the City had denied Lamar's permit application. On November 13, 2006, Lamar's counsel sent a letter to Mr. Roth, the City Planning and Zoning Manager, and requested a written denial so that Lamar could begin the process of appealing the decision. Mr. Roth sent a letter formally denying Lamar's permit application on the ground that the LED display did not comply with the Sign Code. The letter stated that the proposed LED display would violate a provision of the Sign Code that prohibits "[f]lashing or blinking signs or signs using varying light intensity, electronic message boards or similar technology." Marietta Code § 714.06(A)(5). The letter was dated November 20, 2006 and sent via regular mail that date. Lamar received it on November 21, 2006.

Lamar applied for review of the decision to deny the permit, and alternatively for a variance from the Sign Code. Lamar's complete appeal package (the "Appeal/Variance Application") was submitted December 1, 2006—the tenth day after Lamar could have first received Mr. Roth's letter denying the permit on November 21, 2006, and the eleventh day after Mr. Roth sent the letter. See id. § 720.04(A) (providing that appeals to the Board of Zoning Appeals "shall be made within 10 days following notification of the decision appealed from").[7]

On January 24, 2007, City Planning and Zoning Official Patsy Bryan notified Lamar that the Appeal/Variance Application was scheduled for hearing at the Marietta City Council meeting to be held on February 14, 2007. On January 29, 2007, Lamar requested that the hearing be postponed until the March 15, 2007 City Council meeting.

On February 1, 2007, Mr. Roth wrote to Lamar's counsel that the Appeal/Variance Application would not be processed because Lamar had submitted it one day late. Lamar's counsel replied that the Appeal/Variance Application was timely under the City's Zoning Ordinance because it was submitted within 10 days of when Lamar received the denial decision.

At its February 14, 2007 meeting, the Marietta City Council amended the Sign Code. Following amendment, a relevant provision stated: "No general advertising sign or off-premises sign shall contain more than 2 faces; nor shall any multimessage advertising sign or off-premises sign be allowed, including signs that contain trivision panels or other changeable faces, electronic message boards, LED panels or screens, plasma, or any similar technology." Marietta Code § 714.04(F)(4).

## II. Relevant Procedural History

Lamar filed this lawsuit on April 4, 2007. In its Complaint, it named as Defendants

---

6. Lamar apparently applied simultaneously for both a building permit and a sign permit. The parties' respective statements of material facts do not distinguish between the two permits after the applications were submitted. Both discuss denial in terms of a single permit. From this the court infers that both permit applications were denied. However, the court's ruling is ultimately based on Lamar's facial challenge to the Sign Code, and the court's references to the permit speak of the sign permit application.

7. Division 720 of the Marietta Code is attached as Exhibit K to Defendants' Motion for Summary Judgment.

the City, Mr. Roth, and City Attorney Douglas R. Haynie ("Mr.Haynie"). On September 18, 2007, the court entered an Order allowing Lamar to file its First Amended Complaint. On November 7, 2007, Lamar dismissed Mr. Haynie as a defendant to this action. The First Amended Complaint contains eight claims for relief, the first seven of which remain a part of this case.[8] In the First, Second, and Fifth Claims for Relief, Lamar seeks a declaration that (i) the City incorrectly interpreted its Code to find the Appeal/Variance Application untimely; (ii) the City should permit the Board of Zoning Appeals to hear the Appeal/Variance Application; (iii) under Georgia law's vested rights principles, the City should review the Appeal/Variance Application under the laws in effect on November 6, 2006, the date it applied for the permit; and (iv) the proposed LED display does not violate the Sign Code. The Third and Sixth Claims for Relief request writs of mandamus to (i) direct Defendants to schedule the Appeal/Variance Application for a prompt hearing; and (ii) direct Defendants to allow Lamar to install the proposed LED display immediately. The First Amended Complaint's Seventh Claim for Relief asks the court to find the Sign Code invalid under the federal and Georgia constitutions, and seeks damages under 42 U.S.C. § 1983 ("Section 1983"). The Seventh Claim for Relief challenges the Sign Code on the grounds that it vests city officials with unbridled discretion to require that a party obtain a permit before erecting a sign, and that it lacks a time limit by which the city officials must render a decision on a party's permit application.

On December 5, 2007, Lamar filed its Motion for Partial Summary Judgment (seeking a trial on the issue of damages), and Defendants filed their Motion for Summary Judgment. The court will refer to Lamar's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment as the "Summary Judgment Motions." The parties have also filed various motions on evidentiary issues, most of which are still pending before the court. In separate motions, the parties challenge each other's experts on damages. On December 6, 2007, Lamar filed a Motion to Exclude the Expert Testimony of Charles F. Floyd. On December 19, 2007, Defendants filed a Motion to Exclude Testimony of Plaintiff's Expert Witnesses Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* Defendant also challenges some of Lamar's summary judgment evidence. On December 31, 2007, Defendants filed a document styled "Defendants' Notice of Objection and Motion to Strike Certain Exhibits to Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Motion to Strike Portions of the Declaration of Michael L. Reese." Finally, on January 18, 2008, Defendants filed a Motion for Leave to File Certified Copy of Marietta Zoning Ordinance Division 700.

### III. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute over a fact will preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A court must deny summary judgment "if

---

**8.** The First Amended Complaint's Eighth Claim for Relief sought reimbursement for damages suffered for Mr. Haynie's malicious, corrupt, and oppressive actions in violation of O.C.G.A. § 36-33-4. As Lamar voluntarily dismissed Mr. Haynie, this claim was also dismissed.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.,* 538 F.2d 1116, 1119 (5th Cir.1976).[9]

## IV. Summary Judgment Motions

### A. Constitutionality of Sign Code

After thorough review, the court finds that the Sign Code violates the First Amendment to the United States Constitution and must be invalidated in its entirety. The court makes this finding based upon the analysis that follows.

#### 1. Standing to Bring Facial Challenge

■■■ The court first finds that Lamar may properly bring a facial challenge to the Sign Code. A facial challenge seeks to invalidate a statute or regulation as unconstitutional on its face. *Horton v. City of St. Augustine,* 272 F.3d 1318, 1329 (11th Cir.2001). In *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court stated that "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *See also Lamar Adver. Co. v. City of Douglasville,* 254 F.Supp.2d 1321, 1326–27 (N.D.Ga.2003) (Martin, J.) ("Because, in the instant lawsuit, [the plaintiff] asserts that [the defendant's] licensing statute vests unbridled discretion in city officials to permit or deny expressive activity, [the plaintiff] has standing to challenge [the defendant's sign] ordinance on its face."); *Granite State Outdoor Adver., Inc. v. City*

*of Clearwater,* 351 F.3d 1112, 1118 (11th Cir.2003) (denying standing to challenge ordinance's lack of time limits to issue a decision, but distinguishing cases "allowing litigants to facially challenge a licensing scheme vesting the decision-maker with unbridled discretion."). Anyone who is or imminently will be subject to the alleged grant of unbridled discretion may challenge it. *CAMP Legal Def. Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1274 (11th Cir.2006). Lamar alleges that the Sign Code vests city officials with unbridled discretion to waive the permit requirement. Lamar as a permit applicant is subject to that alleged grant of unbridled discretion. Therefore, Lamar's facial challenge is appropriate.

Based largely on *Granite State,* 351 F.3d at 1117–18, the City argues that Lamar lacks standing because it has suffered no injury with respect to the challenged provisions, the lack of time limits in particular. The *Granite State* result turned on the content-neutral nature of the sign ordinance at issue. The court in that case noted that "time limits are required when their lack could result in *censorship* of certain viewpoints or ideas." *Id.* at 1118. As the court explains below, that potential to censor certain viewpoints exists in Section 714.02(A) of the Sign Code. Lamar thus has standing to challenge the entire Sign Code, including its lack of time limits within which a City official must render a decision to grant or deny a permit. See *id.* at 1118; *Café Erotica of Fla., Inc. v. St. Johns County,* 360 F.3d 1274, 1281–83 (11th Cir.2004). That Lamar's speech is in large part commercial does not prevent the court from hearing its facial challenge. *Café Erotica,* 360 F.3d at 1281; see *City of Douglasville,* 254 F.Supp.2d at 1326

---

9. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit

rendered prior to October 1, 1981 as binding precedent.

("[P]arties ... with a commercial interest in speech may facially challenge an ordinance, raising the noncommercial speech interests of third parties.").

2. Sign Code is Invalid Prior Restraint on Speech

■ The court finds the Sign Code constitutionally deficient on its face because it fails to meet the requirements for a valid prior restraint on speech. A prior restraint allows the government to "deny access to a forum for expression before the expression occurs." *Café Erotica,* 360 F.3d at 1282. The Sign Code is a prior restraint because it bestows the authority on departments within the City to require a permit before erecting or changing any sign. Marietta Code § 714.02(A); see *id.* (noting that a sign ordinance requiring a permit prior to erecting a billboard is a restraint on speech in advance of its occurrence); *City of Douglasville,* 254 F.Supp.2d at 1327. A prior restraint on speech carries a heavy presumption of invalidity, and is permissible under the First Amendment only if certain conditions are met. Specifically, it must "(1) ensure that permitting decisions are made within a specified time period, and must (2) avoid 'unbridled discretion' in the hands of a government official." *Café Erotica,* 360 F.3d at 1282 (internal citations omitted); see *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–27, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1361 (11th Cir.1999) ("[L]icensing schemes commonly contain two defects: discretion and the opportunity for delay."). The Sign Code fails both tests.

■ The Sign Code confers unbridled discretion on the City. Unbridled discretion exists where an ordinance lacks precise and objective standards to guide the permitting authority. *Lady J. Lingerie,*

176 F.3d at 1362. Section 714.02(A) of the Sign Code reads, in part:

> Any property owner, business, tenant, agent, or contractor *may be required* to obtain a permit from the Public Works Department and/or the Department of Planning and Zoning prior to the erection, replacement, reconstruction, or relocation of a sign. Said permit *may be required* for all signs except those specifically exempted within this ordinance. *If* said permit is required, the fee for a sign permit will not be required in addition to the building permit.

(emphasis added). The Marietta Zoning Ordinance's definition section, which encompasses the Sign Code, defines "may" as permissive. Marietta Code § 724.01(C). Section 714.02(A) vests relevant officials at the Public Works Department or the Department of Planning and Zoning with total control over whether to require a permit. The remainder of the Sign Code provides no further guidance as to this decision, much less the precise and objective standards necessary to be consistent with the First Amendment.

The Sign Code's grant of discretion creates the potential for content-based discrimination. Defendants insist that the Sign Code is content-neutral because adequate standards guide city officials' discretion to *grant or deny* a permit. Defendants point to Section 714.04, outlining sign regulations with which a sign permit applicant or holder must comply, and Section 714.06, describing signs prohibited in all zoning districts. The court failed to locate any provision in the Sign Code that unambiguously requires an official to grant a permit to all compliant signs. In any event, even assuming permits must be granted to signs in compliance, the court disagrees that this renders the Sign Code content-neutral. Under Section 714.02(A), the relevant officials with the Public

Works Department or the Department of Planning and Zoning may forego the permit requirement based on the content of the speech. Thus, even assuming the City must *grant* a permit if objective standards are met, its discretion *not to require* a permit in the first place is unguided. A party for whom the City might choose to waive the permit requirement not only avoids the expense and process of applying for a permit, but is not subject to the substantive restrictions of the Sign Code like its prohibition against flashing or blinking signs in Section 714.06(A)(5). In this way, Section 714.02(A) creates potential for officials to suppress speech arbitrarily—a favored speaker may erect a flashing or blinking sign while a disfavored speaker may not. *See Café Erotica*, 360 F.3d at 1284 (noting that the ordinance "lacks specific and definite statutory checks on the County Administrator's discretion, thereby impermissibly creating the potential for content-based discrimination"). In sum, the Sign Code violates the First Amendment due to the lack of objective criteria to guide an official's decision

to forego the permit application requirement altogether.[10]

 Second, the Sign Code lacks time limits within which an official must grant or deny a permit application. The ability to delay is another form of discretion. *Lady J. Lingerie*, 176 F.3d at 1362. In light of the City's authority to waive the permit requirement altogether, the lack of time limits allow the City to require one party to wait indefinitely for a permit while another may erect a sign without applying for a permit. This scheme is irreconcilable with the First Amendment. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1269–72 (11th Cir. 2005) (holding that "[t]he absence of *any* decisionmaking deadline effectively vests building officials with unbridled discretion to pick and choose which signs may be displayed by enabling them to pocket veto the permit applications for those bearing disfavored messages."); *Lady J. Lingerie*, 176 F.3d at 1363 ("The ordinance's failure to require a deadline for decision renders it unconstitutional."). Time limits are not absolutely required where an ordinance is

---

**10.** The Sign Code differs in this way from the ordinance the Supreme Court upheld in *Thomas v. Chicago Park District*, 534 U.S. 316, 318–19 & n. 1, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). That ordinance provided that the Park District *"may* deny an application for permit" to use a public park on one of thirteen specific, content-neutral criteria. *Id.* at 319 n. 1, 122 S.Ct. 775 (emphasis added). For example, the Park District may deny a permit application where the applicant has previously damaged Park District property and has not paid for the damage, where the proposed activity would present a danger to health or safety, or where the proposed activity is prohibited by the ordinance's designated uses of the park. Under the Park District's ordinance, every party must *apply* for a permit. *Id.* at 322, 122 S.Ct. 775. The Park District then has the discretion to grant a permit, even if the applicant meets one of the criteria for which a permit may be denied. For example, the Park District could grant a

permit even if the applicant previously damaged Park property and did not reimburse the city. However, the Park District's discretion to waive the permit requirement is cabined by objective criteria. As the Supreme Court pointed out, the *Thomas* ordinance had been interpreted to allow officials to waive the criteria only when it furthered the underlying goals of the regulations. *Id.* at 324–25, 122 S.Ct. 775. By contrast, the Sign Code provides for no limitations at all on the department's discretion to require or waive the permit. The City may allow a party to erect a sign without even applying for a permit, or it may force a party to fill out the permit application. Once a permit is applied for, Defendants argue that content-neutral criteria guide the relevant official in rejecting or accepting the application. *See* Marietta Code §§ 714.02–06. However, nothing guides the initial exercise of discretion in requiring a permit in the first place.

otherwise content-neutral, *see Granite State Outdoor Adver., Inc. v. City of St. Petersburg,* 348 F.3d 1278, 1282 n. 6 (11th Cir.2003), but as explained above, the Sign Code cannot be described as content-neutral given the unbridled discretion accorded officials to waive the permit requirement on any ground.

### 3. Severability

 Severability is impossible in this case. Whether an unconstitutional provision in a legislative act is severable from the rest of the ordinance is a matter of state law. *See Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). In Georgia,

> [w]here one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and preserve the remainder if the remaining portion of the Act accomplishes the purpose the legislature intended. If, however, the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect cannot be given to the legislative intent, the rest of the statute must fall with it.

*Daimler Chrysler Corp. v. Ferrante,* 281 Ga. 273, 274–75, 637 S.E.2d 659, 661–62 (2006) (citations and internal quotations omitted). If the stricken provisions and the remaining provisions are "mutually dependent on one another," severance is improper. *City Council of Augusta v. Mangelly,* 243 Ga. 358, 363–64, 254 S.E.2d 315, 320 (1979).

 The Sign Code's defects are its unlimited discretion and its lack of time limits, both of which affect the entire permitting scheme embodied in the Sign Code. By virtue of those aspects, the Sign Code is an unconstitutional prior restraint on speech. Striking down any particular provisions of the code would fail to accomplish what would be necessary to save the

remainder—that is, time limits for decisionmaking and a mandatory permit requirement. The Sign Code's unconstitutional grant of discretion and lack of time limits thus render the entire Sign Code in violation of the First Amendment. *See Café Erotica,* 360 F.3d at 1292 (noting that severance of one particular provision found unconstitutional "will not address our concerns with the Administrator's unfettered discretion.").

 The severability clause in Section 700.04 of the Zoning Ordinance does not change this result. Where a statute or ordinance contains a severability clause there is a presumption in favor of severance. *Daimler Chrysler Corp.,* 281 Ga. at 275, 637 S.E.2d at 662; *Chambers v. Peach County,* 268 Ga. 672, 674, 492 S.E.2d 191, 193 (1997). However, that presumption is overcome where the stricken and upheld portions of the statute depend on one another. *Daimler Chrysler Corp.,* 281 Ga. at 275, 637 S.E.2d at 662 (citing *Mangelly,* 243 Ga. at 363–64, 254 S.E.2d at 320–21). Striking only the provision of the Sign Code giving unguided discretion to the City in deciding who must have a permit still results in an unconstitutional ordinance. Similarly, the problem of no time limits for acceptance of an application cannot be cured by striking only one portion of the Sign Code. The presumption in favor of severability does not allow this court to give the ordinance an effect that is altogether different from that which was enacted. *R.R. Ret. Bd. v. Alton R.R. Co.,* 295 U.S. 330, 362, 55 S.Ct. 758, 79 L.Ed. 1468 (1935).

Therefore, the court strikes down as unconstitutional the Sign Code, Division 714 of the City of Marietta Zoning Ordinance. Nothing prohibits the City of Marietta from "enact[ing] and enforc[ing] reasonable regulations governing the erection and maintenance of signs" in the future,

*City of Doraville v. Turner Communications Corp.,* 236 Ga. 385, 387, 223 S.E.2d 798, 800 (1976), provided that city officials are not vested with the discretion to impose those regulations or not at their choosing.

## B. Claims Mooted

 The court's ruling that the Sign Code violates the United States Constitution renders moot Lamar's remaining claims. Specifically, the court dismisses as moot Lamar's claims that the Sign Code in effect November 6, 2006 is applicable in this case and permitted the use of LEDs. The court also dismisses as moot Lamar's claim under the Georgia constitution. Finally, the court dismisses as moot Lamar's Section 1983 claim that it was deprived of procedural due process in connection with the City's failure to allow it an appeal for lack of timeliness.[11] The court dismisses as moot the remedies requested in connection with those claims, namely that of a declaratory judgment and a writ of mandamus.

## C. Damages

Because Lamar's rights under the First Amendment were violated, Lamar is entitled to nominal damages. *Al–Amin v. Smith,* 511 F.3d 1317, 1334–35 (11th Cir. 2008); *Harden v. Pataki,* 320 F.3d 1289,

1301 (11th Cir.2003). Furthermore, Lamar is entitled to prove that it suffered actual damages as a result of the deprivation of its First Amendment rights. *See, e.g., Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003) ("If the government fails to comply with the dictates of the [Constitution], the aggrieved party can seek compensatory damages . . . ."); *contra City of St. Petersburg,* 348 F.3d at 1283 (finding that plaintiff was not entitled to actual damages for violation of the First Amendment because it suffered no actual injury). Accordingly, the court directs the parties to file the Consolidated Pretrial Order on the issue of damages within 20 days of the date of this Order.

## V. Evidentiary Motions

### A. Defendants' Motion to Strike

Defendants ask the court to strike certain exhibits attached to Lamar's Motion for Partial Summary Judgment, as well as certain portions of the Declaration of Michael L. Reese (Decl. of Michael L. Reese, Dec. 4, 2007, Ex. B to Pl.'s Mot. for Partial Summ. J (the "Reese Declaration")). The court denies Defendants' Motion to Strike as moot with respect to the Reese Declaration, because the court did not rely on the challenged portions of that declaration in ruling on the Summary Judgment Motions.

---

11. To bring a Section 1983 procedural due process claim, a party must show a constitutionally protected property interest. That alleged interest is created by sources such as state laws and municipal ordinances. *See, e.g., Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (noting that property rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.") (citation and internal quotations omitted); *Daniels v. Crosby,* 444 F.Supp.2d 1220, 1226 (N.D.Fla.2006); *Recchia–Hansemann v. BOCES,* 901 F.Supp. 107, 110 (E.D.N.Y.1995) ("State statutes, local ordinances, and implied

contracts all constitute independent sources capable of creating a property interest. The sufficiency of any such claim of entitlement will turn on state law."). Lamar alleges that *the Sign Code* created a property interest in having its permit application granted. (Br. in Supp. of Pl.'s Mot. for Summ. J. 12.) The court's research indicates that any such interest ceased to exist upon invalidation of the entire Sign Code. It further appears to the court from reviewing Lamar's interrogatory responses that the damages it seeks resulting from the procedural due process violation were also suffered as a result of the First Amendment violation. If either party disagrees, it may petition the court to this effect.

Rather, the Reese Declaration was submitted in support of Lamar's contention that the Sign met the Sign Code's requirements as of November 2006. The court's ruling that the Sign Code is facially unconstitutional renders that claim moot. Therefore, Defendants' Motion to Strike as it pertains to the Reese Declaration is likewise moot.

■■■■ The court will not strike any of Lamar's exhibits. Defendants challenge Exhibits A, F, G, H, I, J, L, M, N, O, P, Q, R, S, T, U, and V to Lamar's Motion for Partial Summary Judgment on the grounds that they were not properly authenticated. As Lamar points out, Exhibits F, G, I, J, L, M, N, O, P, Q, and R were authenticated during at least one deposition. The court finds that these exhibits were authenticated and denies Defendants' Motion to Strike these exhibits. *Contra Biggers on Behalf of Key v. S. Ry. Co.*, 820 F.Supp. 1409, 1415 (N.D.Ga.1993) (Carnes, J.) (granting defendant's objection to an exhibit where "plaintiff has not offered any affidavit or *deposition testimony* authenticating the document pursuant to Rule 901.") (emphasis added). The court also declines to strike Exhibits H, S, and T, which Defendants relied on in their own Statement of Material Facts. The court notes that it may consider unauthenticated documents on a motion for summary judgment if it is apparent that they will be admissible at trial. *See United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1327 n. 2 (S.D.Ala.2003); *cf. Hosea v. Langley*, Case No. Civ. A. 04–0605–WS–C, 2006 WL

314454, at \*8 (S.D.Ala. Feb.8, 2006) (denying motion to strike an exhibit where "it appear[ed] highly likely that plaintiffs will be able to reduce [the exhibit] to admissible form at trial with appropriate authentication testimony.").

The court did not rely on any of the remaining exhibits (A, U, and V) in ruling on the Summary Judgment Motions, so the court denies Defendants' Motion as moot as to those exhibits. Defendants' Motion to Strike is denied in its entirety.[12]

**B. Lamar's Motion to Exclude**

■■■■ Lamar moves to exclude the expert testimony of Dr. Charles F. Floyd ("Dr.Floyd") because Defendants did not disclose him as an expert witness until after the close of discovery. Local Rule 26.2C states, in relevant part:

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based

---

12. Although Defendants have asserted some valid objections, Defendants' Motion to Strike is largely consistent with a larger pattern of litigation tactics that reflects poorly on Defendants. The court pointed this out to Defendants at the hearing on February 6, 2008 regarding their exceeding the page limits on briefs and filing a reply to Lamar's response to its Statement of Material Facts numbering 141 pages in length. The court cannot fail to observe that Defendants persist in making petty objections on matters such as the authentication of an obviously admissible document, while simultaneously flouting the Local Rules in a manner that could actually prejudice its adversary. With this observation in mind, the court DIRECTS Defendants to adhere to this court's Local Rules, and to avoid making unnecessary and overly technical objections from this point forward.

upon a showing that the failure to comply was justified.

LR 26.2C, N.D. Ga. Because Defendants violated Local Rule 26.2C, and have not shown that the violation was justified, the court will not permit them to offer Dr. Floyd's testimony.

The court briefly recounts the procedural history with respect to the disclosure of the parties' experts. The discovery period in this action was set to end on October 15, 2007, and on October 8, 2007 was extended by consent to November 15, 2007 for the limited purpose of taking depositions. The parties agreed "that the discovery period will conclude as scheduled on October 15, 2007 as to all purposes other than the taking of depositions." (Consent Mot. Extending Discovery Period for Limited Purpose of Taking Depositions and Extending Due Date for Summ. J. Mots. ("October 8, 2007 Consent Motion") 2.) In its Initial Disclosures on June 28, 2007, Lamar designated James W. Fisher ("Mr.Fisher") and Michael L. Reese ("Mr.Reese") to testify on the issue of the losses suffered as a result of the City's conduct. Lamar's Initial Disclosures also described how damages would be calculated but did not use any numbers. On September 19, 2007, in response to an interrogatory about the identity of Lamar's experts, Lamar identified Mr. Fisher and Mr. Reese. On the same date in response to interrogatories about damage calculations, Lamar provided descriptions of how it intended to calculate damages, providing formulas and including numbers. On September 20, 2007, before reviewing Lamar's September 19, 2007 interrogatory responses, the City asked Lamar to reveal its expert and provide an expert report. Lamar responded in a letter dated September 24, 2007, and explained that no written report would be provided because Mr. Fisher and Mr. Reese were non-retained, in-house experts and were therefore exempt from the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). On October 16, 2007, the City asked Lamar to confirm this, which Lamar did on October 18, 2007. Defendants deposed Mr. Fisher and Mr. Reese on November 1, 2007. The City received the transcripts on November 9, 2007, and provided them to Dr. Floyd on November 12, 2007. Defendants designated Dr. Floyd as an expert and filed his expert report on November 26, 2007, 11 days after the extended discovery period ended. On that date, Defendants offered to make Dr. Floyd available for deposition and extend the deadline to submit summary judgment motions, but Lamar declined and instead filed its Motion to Exclude. The court now addresses Defendants' arguments.

## 1. Defendants Are Not Exempt From Local Rules

Defendants argue that the 30–day time limit for designating rebuttal experts specified in Federal Rule of Civil Procedure 26(a)(2)(C) is inapplicable. Federal Rule 26(a)(2)(C) provides that expert witnesses and reports are to be disclosed at least 90 days before the trial date or, "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure." Fed.R.Civ.P. 26(a)(2)(C)(ii). Defendants contend that because Lamar's experts were not required to provide expert reports under Federal Rule of Civil Procedure 26(a)(2)(B), the 30–day time limit is inapplicable. This argument does not carry the day because it is this court's Local Rules, not the Federal Rules, that Defendants have violated in this case. Defendants fail to explain to the court how its interpretation of Federal Rule 26(a)(2)(C) would prevent the application of the Local Rules.

### 2. Defendants Had Ample Opportunity to Designate Dr. Floyd

Defendants argue that their failure to disclose Dr. Floyd was justified because the Federal Rules of Civil Procedure require an expert report accompanying expert designation, and Dr. Floyd could not have submitted a rebuttal expert report without reviewing Mr. Fisher's and Mr. Reese's deposition transcripts. The court is not persuaded by this argument. Defendants were on notice of the damages issue from the commencement of this litigation. *See Morrison v. Mann,* 244 F.R.D. 668, 674 (N.D.Ga.2007) (Carnes, J.) (finding late disclosure of plaintiff's expert unjustified where plaintiff should have known that an expert would be necessary to "rebut any potential defense witnesses"). At the very latest, the need for a rebuttal expert on damages was apparent on September 24, 2007 when Lamar identified Mr. Fisher and Mr. Reese as damages witnesses for the third time and explained why no expert report was forthcoming. Despite this, at no point did Defendants make known their intention to designate a rebuttal expert.

Defendants cannot look to the Federal Rules' requirement of an accompanying expert report to justify their disregard for this court's Local Rules. As an initial matter, the court finds Defendants' contention that it could not come up with an expert report without the benefit of Mr. Fisher's and Mr. Reese's depositions untenable in light of the detailed damage formulas provided in Lamar's interrogatory responses. The report Dr. Floyd ultimately prepared bolsters the court's conclusion, as it cites repeatedly to Lamar's interrogatory responses and not at all to the experts' depositions. Nonetheless, if Defendants found it difficult to formulate a proper expert report until after the depositions of Mr. Fisher and Mr. Reese, they could have raised that issue with Lamar or with the court on a number of occasions. For example, the October 8, 2007 Consent Motion was an optimal opportunity for Defendants to disclose their intention to designate a rebuttal expert. In that Motion, the parties extended the discovery period only with respect to depositions—two of the depositions to be taken in that period were those of Mr. Reese and Mr. Fisher. By October 8, 2007, Defendants were obviously aware of the need to rebut Lamar's experts and now claim that they waited to do so only because of the need to review the depositions of Lamar's experts. Despite this, no mention was ever made of a rebuttal witness in the October 8, 2007 Consent Motion. The parties could have then extended discovery to allow Defendants time to review the depositions of Mr. Reese and Mr. Fisher and to disclose a rebuttal expert, but they explicitly limited the extension to deposition-taking. Defendants apparently thought that rather than put their adversary and the court on notice of a potential problem of compliance with both the Federal and Local Rules, Defendants should hide their intention to present a rebuttal witness until after discovery *ended.* The irony in this position is that it emphasizes Dr. Floyd's need to review the depositions of Lamar's experts to prepare his report, while Defendants did not so much as hint at Dr. Floyd's existence until after it was too late for Lamar to depose him. The Local Rules required Defendants to designate Dr. Floyd "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert." LR 26.2C, N.D. Ga. Defendants have not shown they were justified in failing to comply with this rule. Therefore, the court will exclude Dr. Floyd's testimony.

### 3. Lamar Was Not Required to Submit Written Expert Reports

Defendants finally argue that if the court grants Lamar's Motion to Ex-

clude, "it should similarly exclude Lamar's experts on the grounds that they failed to properly provide a written report." (Defs.' Resp. in Opp. to Pl.'s Mot. to Exclude 17.) Lamar confirmed to Defendants in letters on September 24 and October 18, 2007 that Mr. Reese and Mr. Fisher were not required to provide a written report under Federal Rule of Civil Procedure 26(a)(2)(B). Defendants do not appear to dispute that Mr. Reese and Mr. Fisher are not retained or specially employed and their duties do not regularly involve giving expert testimony. Therefore, they fall outside the plain language of Rule 26(a)(2)(B). If Defendants wished to dispute any of those facts, they should have made a written motion following their receipt of Lamar's October 18, 2007 letter confirming that Lamar's witnesses were exempt from the requirement of an expert report. Defendants' request, in a response to Lamar's Motion to Exclude, is not now properly before this court. *See* LR 7.1A, N.D. Ga. The court further agrees with Lamar that *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir.2004), is inapposite because the employee expert in that case was not testifying as a hybrid fact and expert witness, and had testified as an expert in other federal and state court proceedings. Neither of those facts are present here.[13] For all of these reasons, Lamar's Motion to Exclude is granted.

### C. Defendants' *Daubert* Motion

Defendants move to exclude the expert testimony of Mr. Reese and Mr. Fisher

under Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. The Supreme Court has described this rule as assigning to the district court the role of gatekeeper for admission of expert testimony. *Daubert,* 509 U.S. at 589 n. 7, 113 S.Ct. 2786 (scientific evidence); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (technical and other specialized evidence).

 The most common method for fulfilling the court's gatekeeper responsibilities is a *Daubert* hearing, but a hearing is not required. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,* 402 F.3d 1092, 1113 (11th Cir.2005). After review of the relevant briefs, the court has determined that it is necessary to hear testimony from Mr. Reese and Mr. Fisher before ruling on Defendants' *Daubert* Motion. As such, the Clerk is directed to set a hearing date.[14]

---

13. Mr. Reese has testified in one deposition in another case, and never at a trial or hearing. Mr. Fisher has never served as an expert in another case. Both are testifying in the dual capacity as fact and expert witnesses. In fact, Defendants rely on these facts in support of their *Daubert* Motion.

14. In its Motion for Partial Summary Judgment, Lamar indicated it requests a trial by jury on the issue of damages. Should Lamar desire a bench trial, the court will hear the testimony during the bench trial and do its *Daubert* evaluation at that time. The parties may notify the court by way of the Consolidated Pretrial Order whether they wish for the trial to proceed before a jury or the court.

## VI. Summary

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 40] is DENIED, and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 37] is GRANTED. The Sign Code is invalidated as unconstitutional.

The Motion to Strike Defendants' Reply in Further Support of Their Statement of Material Facts, or, In the Alternative, Motion for Leave to File Reply In Further Support of Plaintiff's Statement of Material Facts is GRANTED IN PART AND DENIED IN PART per the court's oral Order in the hearing on February 6, 2008.

The Motions for Leave to File Excess Pages [Doc. Nos. 39, 57, 62] are DENIED AS MOOT per the February 6, 2008 hearing.

Defendants' Motion for Leave to File Certified Copy of Marietta Zoning Ordinance [Doc. No. 68] is GRANTED. Lamar's Motion to Exclude Expert Testimony of Charles F. Floyd [Doc. No. 44] is GRANTED. Defendants' Notice of Objection and Motion to Strike Certain Exhibits to Plaintiff's Motion for Summary Judgment or, In the Alternative, Motion to Strike Portions of the Declaration of Michael L. Reese and Memorandum of Law In Support Thereof [Doc. No. 56] is DENIED.

The court DIRECTS the parties to file the Consolidated Pretrial Order only with respect to the issue of damages for the First Amendment violation under 42 U.S.C. § 1983, within 20 days of the date of this Order. The parties will receive a separate notice of hearing date for Defendants' Motion to Exclude Testimony of Plaintiff's Expert Witnesses Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* [Doc. No. 51].

IT IS SO ORDERED.